# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 665 | **DATE** | 6/13/2002 |
| **CASE TITLE** | | Chatman v. Fairbanks Capital Corp. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss (#5-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss. Specifically, the Court grants the motion to dismiss Plaintiffs' claims regarding the "speed pay" fees and denies the motion to dismiss the claims concerning the "property preservation" fees. Plaintiffs have adequately put Defendant on notice of claims for breach of contract, TILA, ICFA and RESPA. Enter Memorandum Opinion and Order.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | JUN 18 2002 date docketed | |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | 18 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | U.S. DISTRICT COURT CLERK | date mailed notice | |
| JHC | courtroom deputy's initials | | 02 JUN 17 AM 11:18 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES CHATMAN and )
BERNADETTE CHATMAN )
    Plaintiffs, )
                       )
                       )    CASE NO. 02 C 665
v. )
                       )    JUDGE WILLIAM J. HIBBLER
FAIRBANKS CAPITAL CORP. )
    Defendant. )

**DOCKETED**
**JUN 1 8 2002**

MEMORANDUM AND OPINION

Mr. and Mrs. Charles and Bernadette Chatman ("Plaintiffs") allege Fairbanks Capital Corporation ("Defendant") engaged in unlawful mortgage servicing practices. Plaintiffs allege Defendant: breached the terms of Plaintiffs' note and mortgage by imposing certain "speed pay" and "property preservation" fees (Count I); violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602 *et seq.*, and Regulation Z, 12 C.F.R. §226.20(c), by improperly adding these fees to Plaintiffs' unpaid principal loan balance and thus incorrectly stating Plaintiffs' loan balance on the statutorily required variable-rate adjustment disclosure (Count II); violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.*, by asserting the allegedly unauthorized and unperformed "speed pay" and "property preservation" fees (Count III); and violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §2605, by allegedly failing to respond to Plaintiffs' "qualified written

1

18

request." Defendant filed the present motion to dismiss all counts, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. The Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Because Plaintiffs' allegations are taken as true, Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994). The Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168

2

(1993). However, the Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago,* 777 F.Supp. 1437, 1440 (N.D.Ill.1991).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court's review is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes. Fed. R. Civ. P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir. 1993).

**FACTS AND BACKGROUND**

Plaintiffs entered into a home mortgage loan with Defendant. Plaintiffs defaulted on the mortgage and Defendant pursued foreclosure. To avoid foreclosure, Plaintiffs entered into a forbearance agreement (the "Agreement") with Defendant.[1] The

---

[1] While they attached a copy of the mortgage and note as exhibits and referred to the forbearance agreement in the amended complaint (e.g. Exhibit H), Plaintiffs failed to attach a copy of the forbearance agreement. Defendant attached a copy of the agreement to its motion to dismiss and the parties repeatedly refer to this central and necessary document. Accordingly, the Court may and will consider the forbearance agreement along with the pleadings and exhibits. *Menominee Indian Tribe of Wis. v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998)(documents that a defendant attaches to a motion to dismiss may be considered only if they are referred to in the plaintiff's complaint and are central to plaintiff's claim); *see also Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994).

3

Agreement adjusted Plaintiffs' monthly payments and how Defendant could allocate Plaintiffs' payments. Defendant maintains Plaintiffs then defaulted on the Agreement and Defendant moved to reinstate foreclosure proceedings. Plaintiffs mailed to Defendant a "qualified written request" for information about their loan and the Agreement and then filed the present complaint. Plaintiffs recognize the existence of the Agreement, see Compl. Exhibit H, but fail to mention or discuss the allegations regarding foreclosure and the Agreement.

**ANALYSIS**

**Count I: Breach of Contract**

In Count I, Plaintiffs allege Defendant violated the terms of the mortgage, note and Agreement by imposing "speed pay" fees and "property preservation" fees. First, Defendant is entitled to charge these fees for actual work done. Second, even when the Court accepts Plaintiffs' allegations as true, Defendant appropriately charged Plaintiffs for "speed pay" fees. However, Plaintiffs have properly alleged a claim for breach of contract regarding the "property preservation" fees, i.e. Plaintiffs have alleged Defendant did nothing to generate these fees and Defendant has not stated what it actually did to earn the fees.

<u>"Speed Pay" Fees</u>

In their Amended Complaint, Plaintiffs state "[f]rom time to time plaintiffs have made payments by wire transfer. On *such*

occasions Fairbanks has levied a $15 'speed pay fee'". Compl. ¶8 (emphasis added). Plaintiff introduced the term and concept of "speed pay" fees and Defendant further defines this service. Defendant offers "speed pay" to permit a borrower to automatically withdraw funds from their account and to post those funds as certified funds to the borrower's mortgage account. Such a debit or wire transfer service guarantees a mortgage payment is immediately credited as paid in full to avoid a default; this service may be particularly useful when time is of the essence and the borrower wishes to avoid obtaining a cashier's check or money order and the risk and/or expense of overnight mail.

The Amended Complaint states Plaintiff utilized the "speed pay" service to satisfy their commitment under the Agreement. *See* Compl. ¶8. The Agreement states in relevant part:

> 1. If any payment remitted pursuant to this agreement is not in **certified funds**, this Forbearance Agreement shall be considered null and void.
> 2. It is expressly understood and agreed that time is and shall be of the essence as to each payment required to be made by the Mortgagors pursuant to this Agreement. There is no grace period.
> \*\*\*\*
> 4. All funds received by Mortgagee under this Agreement are non-refundable and may be held in suspense account or applied to the amount owing, solely at Mortgagee's discretion. Upon successful completion of this agreement, all funds collected under this agreement shall be applied to the amounts due.
> 5. In all other respects, all of the provisions of the Note and Mortgage and any collateral loan documentation shall remain in full force

5

and effect.

Def. Mot. to Dismiss Ex. 1 (emphasis in original). Defendant charged Plaintiffs for the service of confirming that Plaintiffs paid in valid funds, on time and otherwise in compliance with the Agreement. Plaintiffs do not allege they were unaware Defendant would charge them for this service. Rather, Plaintiffs maintain "[n]either plaintiffs' note and mortgage nor any others provide that the mortgage company may impose charges for accepting payments. The imposition of charges by the recipient of a wire transfer for the privilege of accepting it is contrary to standard commercial practice and the understanding of the public." Compl. ¶8. However, "speed pay" fees are permitted and Plaintiffs can plead no set of facts to support the allegation such fees constitute a breach of contract. Defendant is not required to specifically state every service-related fee in Plaintiffs' note or mortgage. "The mortgage and note cannot anticipate every service request made by a borrower. The borrower is not entitled to services from the lender free of charge just because the lender did not anticipate the request." *Jerik v. Columbia Nat'l., Inc.*, No. 97 C 6877, 1999 WL 1267702, at * 4 (N.D.Ill Sept. 30, 1999)(citing *Cappellini v. Mellon Mortgage Co.*, 991 F.Supp. 31, 39 (D.Mass. 1997) and *Cain v. Source One Mortgage Servs. Corp.*, No 43041-6-I, 1999 WL 674776, at *1 (Wash.Ct.App. Aug.30, 1999)). Further, while the Court accepts all well-pleaded factual allegations as true,

Plaintiffs cannot state a claim that Defendant breached the terms of the mortgage and note when each "speed pay" fee "was deducted from the incoming wire instead of being applied to principal or interest," Compl. ¶8; the Agreement explicitly states Defendant is contractually entitled to allocate the fees at Defendant's discretion. Def. Mot. to Dismiss Ex. 1, ¶4 ("All funds received by Mortgagee under this Agreement are non-refundable and may be held in suspense account or applied to the amount owing, *solely* at Mortgagee's *discretion*." (Emphasis added)).

Plaintiffs used Defendant's service to transfer funds to avoid the delay and expense of a trip to the bank for certified funds and to the post office for immediate shipping. Defendant charged Plaintiff for the service and published the charge on Plaintiffs' account statement. See Compl. Ex. C ("speed pay fee" charged on March 19, April 6 and May 31, 2001). Thus, Plaintiff has failed to state a legal claim for a breach of contract regarding "speed pay" fees. *See also Gofis v. County of Cook*, 754 N.E.2d 374, 383 (1st Dist. 2001)(voluntary payment doctrine applied to payment of fee by delinquent taxpayers).

### "Property Preservation" Fees

Plaintiffs also maintain the "property preservation" fees charged by Defendant are improper because (1) such fees are not authorized by Plaintiffs' mortgage and note and (2) such fees are "fraudulent" and "bogus" charges for work not actually performed,

7

Compl. ¶¶11, 18. "Property preservation" fees are actual expenses incurred by the lender in preserving the value of the mortgaged property in default and the lender's rights in that property. *See Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 964-65 (N.D.Ill. 1998)(property preservation fees and costs incurred for actual work performed are permitted under Paragraph 7).

Regarding the first allegation, Paragraph 7 of the mortgage expressly provides for the imposition of such fees.

> **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then **Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.** Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. ...
> **Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.**

Compl. Ex. B, ¶ 7 (emphasis added). This language in the parties' mortgage entitles Defendant as lender to incur costs to protect the property at issue. In *Majchrowski*, the court addressed this same language and correctly stated a lender has broad leyway as to what it may do and charge to the mortgagee.

> When the borrower breaches any covenant in the Security Instrument or goes into bankruptcy, this language unequivocally permits the lender to take whatever action is necessary to (1) protect the mortgaged

8

> property's value and (2) the lender's rights in the
> property. Under these circumstances, the lender has **full
> authority** to pay for these actions and then charge them
> to the borrower. **There is no limitation on what the
> lender may do and pay for except that it must be
> necessary to protect its rights in or the value of the
> property. The lender's actions do not, for example, have
> to be reasonable, economical, or fair to the borrower.**
> We interpret this language to authorize fees that
> (1) [lender] **actually** incurred in filing a proof of claim
> in the plaintiffs' bankruptcy, as well as (2) property
> inspection fees **actually** incurred because of plaintiffs'
> default and bankruptcy.

*Majchrowski*, 6 F.Supp.2d at 964-65 (emphasis added); *see also Walker v. Countrywide Home Loans, Inc.*, No. B145102, 2002 WL 1068266, at *10, (Cal.App. 2 Dist. May 30, 2002). Here, Defendant charged Plaintiffs monthly $100 "property preservation" fees as a result of Plaintiffs' default. While paragraph 7 of the mortgage clearly empowered Defendant to take whatever actions necessary to protect its property in default and to bill Plaintiff for these expenses, Defendant has not stated or shown what it actually did here to merit reimbursement by Plaintiffs. Defendant is authorized to charge "property preservation" fees for work actually done to protect its property, but Defendant must actually perform work to receive reimbursement.

Since the Court accepts Plaintiffs' allegations as true in a motion dismiss, Plaintiff has adequately pleaded a claim for breach of contract when it alleged these "sums are merely book entries in favor of itself and do not represent actual payments or liabilities." Compl. ¶11(d). Further, whether Defendant "actually

9

incurred" these fees is a factual question beyond the Court's cursory review on a motion to dismiss and may entail discovery for later review on summary judgment. See *Majchrowski*, 6 F.Supp.2d at 965.

**Count II: Truth in Lending Act**

As a result of Defendant's allegedly unauthorized charges, Plaintiffs maintain the notice of interest rate and payment adjustments Defendant mailed to Plaintiffs fails to accurately state the loan balance. Specifically, Plaintiffs assert the loan balance is incorrect because it contains the allegedly improper "speed pay" and "property preservation" fees and thus violates TILA. Since the Court stated above that Defendant was permitted to charge the "speed pay" fees and properly charged them here, Plaintiffs cannot assert a TILA claim concerning "speed pay" fees.

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Walker v. Wallace Auto Sales Inc.*, 155 F.3d 927, 932 (7th Cir. 1998). In keeping with this purpose, TILA requires creditors to clearly disclose finance terms under the credit transaction. See 15 U.S.C. § 1638(a). Despite its broad purpose of protecting consumers from being misled about the cost of

credit, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997).

Under its authority "to elaborate and expand the legal framework governing commerce in credit" and pursuant to TILA, the Federal Reserve Board implemented governing regulations, commonly known as Regulation Z. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980); 12 C.F.R. § 226 (1999). These regulations mandate the disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the finance charge, the annual percentage rate, total of payments, and total sale price. *See* 12 C.F.R. § 226.17(a), 226.18(b)(d)(e)(g)(j).

In the present case, Plaintiffs allege Defendant violated TILA when it failed to give Plaintiffs correct disclosures and instead provided an incorrect adjustment notice that stated a higher loan balance due to Defendant's allegedly improper "property preservation" fees. Compl. ¶31. Plaintiffs have adequately stated a TILA claim. Further, as stated above regarding Count I, a motion to dismiss will not address the merits of a complaint; factual issues remain, i.e. the existence of actual work done to merit "property preservation" fees, and these issues intertwine Counts I, II, III and IV.

### Count III: Illinois Consumer Fraud Act

To prove a violation of the ICFA, Plaintiffs must allege (1)

11

Defendant engaged in a deceptive act or practice; (2) Defendant intended that Plaintiffs rely on that deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the act proximately caused damage. *Williams v. Thomas Pontiac, Inc.*, No. 99 C 882, 1999 WL 787488, at *3 (N.D.Ill. Sept. 24, 1999) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970-71 (7th Cir.1999)). "Unlike TILA, the ICFA 'does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation." *Greisz v. Household Bank (Illinois)*, 8 F. Supp.2d 1031, 1043 (N.D. Ill. 1998) (citing *Lanier v. Associates Finance, Inc.*, 499 N.E.2d 440, 447 (Ill. 1986)). Because TILA and Regulation Z are laws administered by the Federal Reserve Board, a "defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act." *Lanier*, 499 N.E.2d at 447.

Further, Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Seventh Circuit has stated clearly that Rule 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud." *Id.* "Although the states of mind may be pleaded generally the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the

12

first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Thus, Plaintiff must plead the time, place and content of the allegedly fraudulent misrepresentation, as well as the parties to that communication. *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050 (7th Cir.1998); *see also Taylor v. Bob O'Connor Ford, Inc.*, No. 97 C 720, 2000 WL 876920, at *2 (N.D.Ill. June 29, 2000). Further, a plaintiff must plead a complaint alleging a violation of the ICFA with the same level of particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996).

In the present matter, Plaintiffs' Amended Complaint adequately sets forth a claim for violation of the ICFA. Plaintiffs' allegations regarding improper billing for sham "property preservation" fees and the resulting misrepresentation in Plaintiffs' mortgage account statements are sufficient to assert a fraud cause of action.[2]

---

[2] Illinois courts, apparently suspicious of the motives of plaintiffs' attorneys' fees, repeatedly caution against transforming every breach of contract into consumer fraud. *Long v. Wix Auto*, No. 00 C 5842 (N.D.Ill January 4, 2001) (Mot. to Dismiss Op.)(Judge Zagel); *Golembiewski v. Hallberg Ins. Agency*, 635 N.E.2d 452, 460 (1st Dist. 1994). "Every individual breach of contract between two parties... does not amount to a cause of action cognizable under the (ICFA)... If the (ICFA) did apply, then common law breach of contract actions 'would be supplemented in every case with an additional and redundant remedy.'" *Golembiewski*, 635 N.E.2d at 121 (quoting *Exchange National Bank v. Farm Bureau Life Ins. Co*, 438 N.E.2d 1247, 1250 (Ill. 1982)). However, the complaint adequately pleads an ICFA claim concerning Defendant's purported misconduct in charging "property preservation" fees; further, the claim raises factual issues that should not be decided on a motion to dismiss. *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 232 (2nd Dist. 1999).

**Count IV: RESPA**

The Cranston-Gonzales Amendments to RESPA place requirements on servicers of federally related mortgage loans when they receive a qualified written request from a borrower. 12 U.S.C. § 2605 et seq. The servicer must provide a written response acknowledging the receipt of a qualified written request within twenty days of receiving the borrower's letter. 12 U.S.C. § 2605(e)(1)(A). The servicer must then do one of three things within sixty days of receiving the letter: (1) correct the borrower's account and inform the borrower of those corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes the borrower's account is correct; or (3) investigate and provide a written explanation to the borrower of the reasons that the servicer cannot obtain the information that the borrower is requesting. *Johnstone v. Bank of Am., N.A.*, 173 F.Supp.2d 809, 812 (N.D.Ill.2001) (citing 12 U.S.C. § 2605(e)(2)). Also, during the sixty days after the servicer receives a qualified written request from the borrower, the servicer "may not provide information regarding an overdue payment relating to the borrower's letter to a consumer reporting agency." *Id.* at 812-13. RESPA explicitly provides for individual causes of action and allows for actual damages, as well as statutory damages upon a showing of a pattern or practice of noncompliance with the duty to respond to borrower inquiries. 12 U.S.C. § 2605(f).

14

In the present case, Plaintiffs allege they mailed a "qualified written request" to Defendant, Defendant failed to acknowledge and react to the letter, and thus Defendant violated RESPA. Defendant argues Plaintiff did not act in good faith and maintains Plaintiffs' letter was a litigation strategy that requested information governed by the rules of discovery in the Federal Rules of Civil Procedure.

Defendant offers an interesting and persuasive challenge to Plaintiffs' RESPA claim. RESPA's principle purpose is to protect home buyers from material non-disclosures in settlement statements and abusive practices in the settlement process. *Cortez v. Keystone Bank,* No. 98-2457, 2000 WL 536666, at *10 (E.D.Pa. May 3, 2000). Here, Plaintiffs' filed the present complaint before the expiration of the sixty days for Defendant to answer the "qualified written request." If Plaintiffs sincerely desired the information they requested in their letter, then it stands to reason they might have given Defendant the opportunity to respond in the time allotted.

However, the Court must view the facts in the present motion to dismiss in the light most favorable to Plaintiffs and finds Plaintiff's October 13, 2001 letter constitutes a "qualified written request" for the purpose of deciding Defendant's motion to dismiss. This letter identifies that Plaintiffs questioned and disputed the application of their payments under the Agreement, the accounting of "speed pay" and "property preservation" fees and

related alleged misconduct. Therefore, this letter, taken in the light most favorable to Plaintiffs, satisfies the requirements of § 2605(e)(3). *See McDonald v. Washington Mut. Bank*, No. 99 C 6884, 2000 WL 967994 (N.D.Ill., Jul 11, 2000).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss. Specifically, the Court grants the motion to dismiss Plaintiffs' claims regarding the "speed pay" fees and denies the motion to dismiss the claims concerning the "property preservation" fees. Plaintiffs have adequately put Defendant on notice of claims for breach of contract, TILA, ICFA and RESPA.

**IT IS SO ORDERED.**
**DATED:** June 13, 2002

WILLIAM J. HIBBLER, DISTRICT JUDGE